IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| GWENDOLYN GRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:09cv520-MHT |
| | ) | (WO) |
| CITY OF MONTGOMERY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

Plaintiff Gwendolyn Gray brings federal employment-discrimination claims against defendant City of Montgomery, Alabama. Gray charges that, on two occasions, the city discriminated against her because she is an American of African descent, when it chose not to promote her to the position of Emergency Communications Sergeant I ("ECS I"). She further charges that, after she engaged in protected activities by filing an administrative charge of discrimination as well as the instant lawsuit, the city retaliated on five occasions,

including another instance where the city again chose not to promote her to the ECS I position.

Gray asserts these claims pursuant to Title VII (Title VII of the Civil Rights Act of 1964, as amended and as codified at 42 U.S.C. §§ 1981a, 2000e to 2000e-17) and § 1981 (the Civil Rights Act of 1866, as amended, as codified at 42 U.S.C. § 1981, and as enforced through 42 U.S.C. § 1983). This court has original jurisdiction over the Title VII claims under 42 U.S.C. § 2000e-5(f)(3) and the § 1981 claims pursuant to 28 U.S.C. § 1343.

The City of Montgomery now moves for summary judgment in its favor on all claims. For the reasons that follow, the city's motion will be granted.


## I. SUMMARY-JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

2

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must view the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  <u>Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

## II. FACTUAL BACKGROUND

The City of Montgomery hired Gray in December 2006 as an Emergency Communications Officer in the Communications Department.  Gray challenges three instances where the city chose not to promote her to the ECS I position.

### A.  March 2008 Promotion of S. Payton

In March 2008, the city chose to promote Stacy Payton, over Gray, to the ECS I position.

When the Communications Department had a vacancy, it sent a 'position fill request' to the City and County Personnel Department, which then created a register of eligible individuals who met the minimum qualifications

3

for the position.  Once a register was created, the Personnel Department could preserve the register for up to two years or it could declare it to be 'exhausted' before the two year period ended, with two possible results: the register, and any names remaining on it, could be discarded completely or any names left on it could be transferred to the new register.  As long as the Personnel Department preserved a register or transferred names to a new register, it was not necessary for applicants currently listed to reapply for a new opening.  However, when the Personnel Department discarded a register, individuals previously listed on the register needed to reapply in order to be considered for a new opening.

In January 2007, Gray applied for an open ECS I position.  The minimum qualifications for the ECS I position were set forth in the job announcements as follows:

> "Applicants must have at least two (2) years of E-911 call-taking or dispatching experience in a public safety organization.  Must have at least

4

> **one (1) year of experience dispatching
> in an E-911 Communication Center equal
> in programmatic and geographical size to
> the City of Montgomery; or equivalent
> combination that provides the necessary
> skills and abilities to perform the
> job."**

Def.'s Mot. Summ. J. Exs. 5, 8, 12 (Doc. Nos. 15-5, 15-8,
15-12.).  Gray met these qualifications and was placed on
the register as a qualified applicant.  Another
candidate, however, was promoted to the position.

In December 2007, the Communications Department
submitted a 'position fill request' for another ECS I
position.  The Personnel Department chose to 'exhaust'
and discard the previous register (which still had Gray's
name on it from her earlier application) and then
provided the Communications Department with the names of
three individuals from a new register.  Gray did not
submit an application for the new register.  In March
2008, the Communications Department promoted Payton, a
white person, to the ECS I position.

Personnel Director Barbara Montoya testified in an
affidavit that because "Gray did not submit an

5

application to the Personnel Department for this job posting[,] ... her name was not qualified as a candidate and her name did not appear on the register to be considered for the position." Def.'s Mot. Summ. J. Ex. 9 at 3 (Doc. No. 29-1.).  There is no evidence that the city notified Gray that her name had been removed from the register.

### B.  June 2008 Promotion of J. Routon

In April 2008, the Communications Department submitted another 'position fill request' for the ECS I position.  Gray applied this time, and her name was placed on the register.  However, Johanna Routon, a white person, was promoted in June to the position.  In a letter recommending Routon, Communications Department Chief Larry Fisher stated that "all candidates were highly qualified and the selection process was difficult" but that Routon had "over seven (7) years as a 9-1-1 call taker and radio dispatcher, including law and fire knowledge."  Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 27

(Doc. No. 50-30.)   Fisher added that Routon had "experience as a Communications Training Instructor and ha[d] acted as an On-Duty Shift Supervisor."   Id. Finally, Fisher emphasized that Routon "was elected by her peers to represent them on the City of Norfolk Employee Relations Committee."   Id.

Chief Fisher and Communications Department Deputy Chief J. M. Dillard have also stated in affidavits that Routon was chosen over Gray for the position because of the "seven (7) years and four (4) months of current experience she had compared to the two (2) years and nine (9) months of experience Ms. Gray had up to 1991 and the approximately 1 and ½ years while at the Montgomery Department of Communications." Def.'s Mot. Summ. J. Exs. 6 at 3, 10 at 1-2 (Doc. No. 15-6; Doc. No. 15-10.)   They also mentioned Routon's involvement with her previous employer's Employee Relations Committee as a reason for her selection, and they further noted that Gray's personnel file "had a number of disciplinary issues

within the last year." Def.'s Mot. Summ. J. Exs. 6 at 3,
10 at 2 (Doc. No. 15-6; Doc. No. 15-10.)


### C.  April 2010 Promotion of M. Smith

Another ECS I position was posted in January 2010.
Although Gray also applied for this position, Montsho
Smith, an African-American, was promoted to the position.
In his deposition, Deputy Chief Dillard could not recall
why Smith was selected.  However, the record shows that
Smith had 13 years of experience as a dispatcher with the
city at the time she was promoted.


### III. DISCUSSION

### A.  Race Discrimination

Gray brings two claims of race discrimination.  She
asserts that the City of Montgomery discriminated against
her when it failed to promote her to the ECS I position
in March 2008 (when Payton was selected) and again in
June 2008 (when Routon was selected).  Under both Title
VII and § 1981, it is generally illegal for an employer

to discriminate against its employees because of their race.  42 U.S.C.A. § 2000e-2(a)(1); 42 U.S.C.A. § 1981.

As a threshold issue, the city argues that Gray's Title VII claims are time barred.  "Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies." Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1317 (11th Cir. 2001).  To exhaust her remedies, the plaintiff must file a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").  Id.  For a charge to be timely in a non-deferral state such as Alabama, the EEOC charge must be filed within 180 days of the last discriminatory act.  42 U.S.C. § 2000e-5(e)(1).

Because Gray did not file her EEOC charge until January 15, 2009 (more than 180 days after the alleged acts in her race-discrimination claims), her Title VII claims are time barred.  However, because the city has not argued that Gray's § 1981 claims are outside of the statute of limitations, her race-discrimination claims,

9

to the extent they rest on § 1981, are not time barred and will be reviewed on the merits.

This § 1981 case is governed by the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Standard v. A.B.E.L. Services, Inc., 161 F.3d 1318, 1330 (11th Cir.1998) ("Both [Title VII and § 1981] have the same requirements of proof and use the same analytical framework[.]"). Under the McDonnell Douglas approach, a plaintiff has the initial burden of establishing a prima-facie case of unlawful employment discrimination by a preponderance of the evidence. McDonnell Douglas Corp, 411 U.S. at 802; Young v. General Food Corp., 840 F.2d 825, 828 (11th Cir. 1988). If the plaintiff establishes a prima-facie case, the burden then shifts to the defendant to rebut the presumption by articulating a legitimate, non-discriminatory reason for its employment action. Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000). The defendant has the burden of production, not of persuasion, and thus need not convince a court that

the reason advanced actually motivated its actions. See, e.g., Texas Dep' t of Cmty Affairs v. Burdine, 450 U.S. 248, 253-55, 258 (1981); McDonnell Douglas, 411 U.S. at 802.

Once the defendant satisfies this burden of production, "the presumption of discrimination is eliminated and the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the [defendant] were not the real reasons for the adverse employment decision." Chapman, 229 F.3d at 1024 (citation and internal quotations omitted). The plaintiff may meet this burden by persuading the court that a discriminatory reason more than likely motivated the defendant or by demonstrating that the proffered reason for the employment decision is not worthy of belief. Burdine, 450 U.S. at 256; see also Mayfield v. Patterson Pulp Co., 101 F.3d 1371, 1376 (11th Cir. 1996). This can be accomplished by pointing to

"weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered explanation. <u>Jackson v. Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) (citation and internal quotations omitted).

### 1.

Gray may establish a prima-facie case of race discrimination in promotion by showing that: (1) she is a member of a protected class; (2) she was qualified and applied for the position; (3) she suffered an adverse-employment action (here, the failure to promote); and (4) the employer either continued to seek applicants or filled the position with an employee outside her protected class. <u>See</u> <u>Walker v. Mortham</u>, 158 F.3d 1177, 1192 (11th Cir. 1998).

With respect to the March 2008 promotion of Payton, it is undisputed that Gray meets the first element of her prima-facie case (since she is an African-American) and the fourth element (as the city promoted Payton, a white

person, to the ECS I position).  The second and third elements, however, are in dispute.

The city contends that Gray was not considered for the ECS I position (given to Payton in March 2008) because Gray did not apply for it.  The city explains that Gray did not submit an application for the position when the Personnel Department posted the opening; that she was not listed as a qualified individual on the register that the Personnel Department gave to the Communications Department; and that, as a result, the Communications Department did not have the authority to promote her to the position.

Gray does not maintain that she submitted an application in response to the opening, but argues that her January 2007 application and placement on the list of eligible candidates for the ECS I position in February 2007 should have qualified her as an eligible candidate in March 2008.  The gravamen of Gray's claim, then, is that the city discriminated against her when it discarded the register created in connection with the February 2007

position and when it failed to notify her that she needed
to reapply in order to be considered for the March 2008
position.

In light of Gray's charge, the fact that she has not
pleaded the second and third elements of the prima-facie
case should not necessarily bury her claim.  The Supreme
Court has explained:

> "The method suggested in <u>McDonnell</u>
> <u>Douglas</u> for pursuing this inquiry . . .
> was never intended to be rigid,
> mechanized, or ritualistic. Rather, it
> is merely a sensible orderly way to
> evaluate the evidence in light of common
> experience as it bears on the critical
> question of discrimination.  A prima
> facie case under <u>McDonnell Douglas</u>
> raises an inference of discrimination
> only because we presume these acts, <u>if</u>
> <u>otherwise unexplained</u>, are more likely
> than not based on the consideration of
> impermissible factors."

<u>Furnco Const. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978)
(emphasis added).  In other words, even if Gray does not
strictly satisfy the second and third prima-facie
elements, the critical question is whether the city's
acts, viewed in the light most favorable to Gray and <u>if</u>

14

<u>otherwise   unexplained</u>,   raise   an   inference   of discrimination.

In this instance, though, it does not appear from the record   that   the   city's   acts   raise   an   inference   of discrimination.   Gray presents two arguments in favor of her  position.   First,  she  alleges  that  Deputy  Chief Dillard   purposefully   ordered   that   the   register   be discarded, even though he knew that she was interested in the promotion, given that she had previously interviewed for the ECS I position after applying for it in January 2007.   Gray asserts that "[d]ocuments provided by the ... Personnel  Board  both  clearly  state  that  it  was  Deputy Chief   Dillard,   the   selecting   supervisor,   who   made   the decision to register for additional applications."  Pl.'s Resp. Def.'s Mot. Summ. J. at 13-14 (Doc. No. 49.)   In fact,  Gray  cites  just  one  document  in  support  of  this assertion--a December 2007 email sent from a secretary for the Department of Communications to an employee in the Personnel Department.   The email states:

> "We have just filled out a position fill
> request   for   the   ECS1   position.    Per

15

> Chief Dillard, based on the fact that there are only three names remaining on the ECS1 register, we would like to have a test arranged for this position. Please advise."

Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 6 (Doc. No. 50-8.) Gray concludes, therefore, that Dillard made the decision to discard the old register when he issued this request to the Personnel Department.

This conclusion overlooks the fact, however, that once the Personnel Director was confronted with this request, it was ultimately her decision whether to follow the request by ordering a new test for the position. Further, under the County Personnel Rules, even after deciding to arrange for a new test, the Personnel Director, not Dillard, decided to discard the old register: the director could have chosen to combine a new eligible list of employees with the existing list from the old register but she did not. There is no evidence that Dillard played any role, direct or indirect, in the ultimate decision to discard the 2007 register. Thus, Dillard's action does not raise an inference of

16

discrimination because the Personnel Director, not Dillard, made the ultimate decision to discard the old register.

Second, Gray asserts that if the city discarded a register, it was supposed to send notice to the individuals on the register informing them that they needed to reapply. In support, Gray cites two documents: a portion of a deposition of Deputy Chief Dillard, and an example of such a notice that appears to have been sent to her in February 2010. Dillard testified that it was his understanding, from discussions with the Personnel Department, that when the Personnel Department discarded a register, it was supposed to send notification to everyone on that register. However, the city asserts that there is no statute, ordinance, rule, or policy which requires either the city or the Personnel Department to provide notice to an applicant when a register is discarded, nor has Gray pointed to any. But more importantly, even assuming the Personnel Department did have a practice of notifying applicants when the register

17

is discarded, the court has no evidence before it that the practice was applied in a manner such that, without explanation, a discriminatory inference could follow. Moreover, Gray has not pointed to any evidence, or even made an argument, that the Personnel Department Director personally was even aware of Gray's race.

The city's acts, therefore, do not raise an inference of racial discrimination as to Gray's March 2008 failure-to-promote claim.  As a result, because Gray is unable to establish a prima-facie case, summary judgment in favor of the city is appropriate on this claim.

### 2.

As stated, Gray asserts that the City of Montgomery discriminated against her when it failed to promote her to the ECS I position in March 2008 (when Payton was selected) and again in June 2008 (when Routon was selected).  Even assuming that Gray has established prima-facie cases as to both her March and June 2008 failure-to-

promote claims, the City of Montgomery is still entitled to summary judgment on these claims.

The city has met its burden of coming forward with legitimate, non-discriminatory reasons for the March and June 2008 challenged actions: namely, that, if Gray had applied for the March 2008 position, Payton would still have been selected because of her greater experience in telecommunications; and that Routon was selected over Gray because of her greater experience in telecommunications and her experience working in a supervisory capacity. Therefore, the critical question is whether Gray has produced sufficient evidence to show that the city's stated reasons are pretextual. A plaintiff seeking to use comparative qualifications to rebut a defendant's proffered nondiscriminatory reasons for promoting another employee "must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" Brooks v.

County Com'n of Jefferson County, Ala., 446 F.3d 1160,
1163 (11th Cir. 2006) (quoting Cooper v. S. Co., 390 F.3d
695, 732 (11th Cir. 2004), cert. denied, 126 S. Ct. 478
(2005)).  Gray does not dispute the fact that Routon, at
least, had more telecommunications experience as well as
supervisory experience.    However, she asserts three
arguments for why the city's nondiscriminatory reasons are
pretextual.

First, Gray argues that the city has not offered a
consistent rationale for the selection of Payton over
Routon, in March 2008, and of Routon over Gray, in June
2008.  She emphasizes that the city chose Payton over
Routon based on the fact that Payton had two years of
experience with the Communications Department, whereas
Routon had none, in spite of Routon's extensive experience
outside of the city.   Gray then points out that this
choice is hard to reconcile with the city's decision to
choose Routon over Gray, since Gray also had two years of
experience with the Communications Department.  This line
of reasoning, however, overlooks the fact that Payton had

substantial experience in telecommunications within other city departments, including six years of work as an Emergency Communications Officer for the Montgomery County Sheriff's office and seven years of experience as an Emergency Communications Officer for the Montgomery Fire Department. In light of Payton's full employment history, it is evident that, with respect to both hiring decisions, the city chose the candidate with the most overall telecommunications experience.

Second, Gray argues that both Payton and Routon had more serious disciplinary histories than she did. Gray points out that Payton was suspended for 15 days for failing to dispatch an ambulance while employed by the Montgomery Fire Department. (Payton worked for the Fire Department from August 1991 through June 1999). She also alleges that Payton took unauthorized leave while working for the Communications Department.

With respect to Routon, Gray notes that Routon was subject to serious discipline for "abandonment of duty" just six months before the city hired her. The record

21

shows that Routon "portray[ed] disrespect and a severe derelict of duty" when she violated three separate rules, during the course of one incident, while employed with the City of Norfolk, Virginia.  Pl.'s Resp. Def.'s Mot. Summ. J. Ex. 19 at 7 (Doc. 50-21.)  More specifically, she was disciplined for: (1) "Failure to report to duty when scheduled"; (2) "Failure to call to report you were going to be out or returning to work"; and (3) "Failure to follow procedures that are in place to obtain leave."  Id.

Gray argues that, in contrast to Payton and Routon, she was not subject to any "major discipline" during the year before the promotion decisions.  The record shows, however, that Gray did have "a number of disciplinary issues" in the year preceding the June 2008 promotion, including the fact that she was disciplined for rudeness to a 911 caller.  Def.'s Mot. Summ. J. Ex. 10 (Doc. No. 15-10.)  Therefore, while a jury could find that Gray's disciplinary history was less serious than that of Payton and Routon, Gray has not shown "that the disparities between the successful applicant's and her own

qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." <u>Brooks v. County Com'n of Jefferson County, Ala.</u>, 446 F.3d at 1163 (citation and internal quotations omitted).

Third and finally, Gray argues that, as compared to Routon, her experience, while more limited, was qualitatively superior, given that none of Routon's experience came from working with the City of Montgomery. Again, however, while a jury might find that experience working with the City of Montgomery is generally more valuable than working elsewhere, Gray has still not shown "that the disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." <u>Id</u>.

In short, where, as here, "the defendant's justification evidence completely overcomes any inference

23

to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." <u>Grigsby v. Reynolds Metals, Co.</u>, 821 F.2d 590, 597 (11th Cir. 1987). Thus, summary judgment on Gray's failure-to-promote claims because of her race will be granted in favor of the City of Montgomery.

## B.   Retaliation

Relying on Title VII, Gray claims that, starting after she filed a charge with the EEOC in January 2009, the City of Montgomery retaliated against her on five separate occasions.

The elements of the prima-facie case of retaliation are (1) protected activity, (2) materially adverse action, and (3) a causal link between the protected activity and the adverse action. <u>Goldsmith v. Bagby Elevator Co.</u>, 513 F.3d 1261, 1277 (11th Cir. 2008) (citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006)).  As the court explains below, while Gray has identified protected

24

activities and materially adverse actions, she has not established a causal link between any protected activity and any adverse action.

"Statutorily protected expression includes internal complaints of discrimination to superiors, as well as complaints lodged with the EEOC and discrimination-based lawsuits." Gerard v. Board of Regents of State of Ga., 324 Fed. Appx. 818, 825 (11th Cir. 2009) (citing Pipkins v. City of Temple Terrace, Fla., 267 F.3d 1197, 1201 (11th Cir. 2001)). There is no question that, in filing a charge of discrimination with the EEOC and in filing the instant lawsuit, Gray was engaging in protected activity. Thus, Gray has identified two instances of protected activity: filing a charge with the EEOC (January 2009) and filing the instant lawsuit (June 2009).

With respect to an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington

25

<u>Northern</u>, 548 U.S. at 68 (internal quotations omitted); <u>see also</u> <u>Crawford v. Carroll</u>, 529 F.3d 961, 973-74 (11th Cir. 2008) (concluding that the <u>Burlington Northern</u> standard is broader than the previously applicable "adverse employment action" standard).   "The anti-retaliation provision [of Title VII] protects an individual not from all retaliation, but from retaliation that produces an injury or harm."  <u>Burlington Northern</u>, 548 U.S. at 67.  "[T]he significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters."  <u>Id</u>. at 69.  Trivial acts, such as "petty slights, minor annoyances, and simple lack of good manners" do not rise to the level of materially adverse actions because they are unlikely to "deter victims of discrimination from complaining to the EEOC, the courts, and their employees."  <u>Id</u>. at 68 (internal quotations omitted); <u>see also</u> <u>Crawford</u>, 529 F.3d at 973 n.13 (noting that <u>Burlington Northern</u> "strongly suggests that it is for a jury to decide whether anything

more than the most petty and trivial actions against an employee should be considered").

Gray argues that she suffered five separate adverse actions: (1) disciplinary action on April 14, 2009, for alleged rudeness during an emergency call; (2) disciplinary action on April 28, 2009, for allegedly delaying the dispatch of a police officer; (3) disciplinary action in May 2009, for allegedly failing to conduct herself in a professional manner during an interaction with another officer; (4) the denial of a merit raise in December 2009; and (5) the promotion of Smith over her to the ECS I position in April 2010.  The court will assume that under the Burlington Northern standard all of these events qualify as materially adverse actions.

With respect to the third prima-facie element, the requirement of causation in a retaliation case is to be interpreted broadly, meaning that the plaintiff "merely has to prove that the protected activity and the negative employment action are not completely unrelated." Gary v.

<u>Hale</u>, 212 Fed. Appx. 952, 957 (11th Cir. 2007) (citing

<u>Meeks v. Computer Assocs.</u>, 15 F.3d 1013, 1021 (11th Cir.

1994)).  This burden "can be met by showing close temporal

proximity between the statutorily protected activity and

the adverse employment action."  <u>Thomas v. Cooper

Lighting, Inc.</u>, 506 F.3d 1361, 1364 (11th Cir. 2007).

However, "mere temporal proximity, without more, must be

'very close.'"  <u>Id.</u> (citing <u>Clark County Sch. Dist. v.

Breeden</u>, 532 U.S. 268, 273 (2001)).  "[I]n the absence of

other evidence tending to show causation, if there is a

substantial delay between the protected expression and the

adverse action, the complaint of retaliation fails as a

matter of law."  <u>Thomas</u>, 506 F.3d at 1364.  In <u>Thomas</u>, the

Eleventh Circuit found that a plaintiff did not

demonstrate a causal connection between a complaint of

sexual harassment and a termination of employment three

months later where she did not present other evidence.

As to Gray's EEOC charge, there is a three-to-four-

month gap between the time she filed her charge of

discrimination (January 2009) and each instance of

disciplinary action (April and May 2009).  There is an even larger gap between the EEOC charge and the denial of a merit raise (December 2009) as well as between the EEOC charge and Smith's promotion (April 2010).  The evidence is insufficient to support the finding of a causal connection between the filing of the EEOC charge and any later adverse action.

As to the filing of this lawsuit (June 2009), because the disciplinary actions preceded this event, this protected activity could not have caused the disciplinary actions.  Also, there is a six-month gap between the lawsuit filing and the denial of a merit raise, and a ten-month gap between the filing and Smith's promotion.  The evidence is insufficient to support the finding of a causal connection.

Gray further contends the causal-connection requirement is satisfied because her lawsuit itself constitutes a 'continuing' protected activity, with the result that the lawsuit and any adverse action occurring at any time during the pendency of the lawsuit, no matter

how long after filing, would have occurred simultaneously. The court rejects Gray's argument for two reasons. First, as stated, "[a] prima facie case ... raises an inference of discrimination only because we presume these acts, <u>if otherwise unexplained</u>, are more likely than not based on the consideration of impermissible factors." <u>Furnco Const. Corp. v. Waters</u>, 438 U.S. 567, 577 (1978) (emphasis added). Gray has failed to explain why, for an adverse action that occurred perhaps years after a lawsuit or complaint was filed, the inference of discrimination should apply just because the lawsuit was still pending. It can be reasonably assumed that a defendant would be angry upon first learning that a lawsuit charging racial discrimination had been filed against him and that any adverse action taken against the filer immediately after the filing is tied to that anger; however, the tie is too attenuated and the assumption has no reasonable basis when the adverse action comes years, or even many years, later. Second, if the court were to accept Gray's argument, it would follow that not only a lawsuit but an EEOC charge

30

(or for that matter any and all internal administrative complaints) would constitute a continuing protected activity, with the result that, for all adverse actions taken while the charge or complaint was pending, the causal-connection requirement would be satisfied. Gray's argument would then essentially eviscerate, in those instances where a lawsuit or complaint was the protected activity, the whole causal-connection requirement that "mere temporal proximity, without more, must be 'very close.'" Thomas, 506 F.3d at 1364 (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)).

The court, however, recognizes that separate protected activity could occur in a lawsuit or charge. For example, a plaintiff could give a deposition that angers a defendant. The court agrees that this event could constitute protected expression, for a plaintiff can engage in multiple instances of protected activity at different stages of a lawsuit. See 42 U.S.C. § 2000e-3(a) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees ...

because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter"). However, Gray has not pointed to any such separate protected activity occurring in her lawsuit that has allegedly led to a later adverse action.

Finally, the court also notes that, even if Gray were able to demonstrate a causal link between a protected activity and Smith's promotion, the city has provided a legitimate, non-discriminatory reason for hiring Smith. See Sullivan v. National R.R. Passenger Corp., 170 F.3d 1056, 1059 (11th Cir. 1999) ("Once the plaintiff makes out a prima facie case, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action.") (citation and internal quotations omitted). The record shows that Smith had 13 years of experience as a dispatcher with the city at the time she was promoted, while Gray had only six years of experience in multiple cities.

Once the defendant articulates a legitimate reason for the adverse-employment action, "[t]he plaintiff must then show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct." Id. (citation omitted). Again, "[a] plaintiff must show that the disparities between the successful applicant's and her own qualifications were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Brooks v. County Com'n of Jefferson County, Ala., 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and internal quotations omitted); see also Vinson v. Department of Corrections, Florida, 672 F.Supp.2d 1247, 1273 (N.D. Fla. 2009) (Paul, J.) (explaining in the context of a retaliation claim that, "'Where an employee seeks to prove pretext through qualifications alone, the difference in qualifications must be so glaring that no reasonable impartial person could have chosen the candidate selected for the promotion in question over the plaintiff'") (quoting Vessels v.

<u>Atlanta Indep. Sch. Syst.</u>, 408 F.3d 763, 772 (11th Cir. 2005)).

   To show that the city's articulated reason for hiring Smith was pretextual, Gray contrasts the two candidates' educational backgrounds.  Gray demonstrates that she has a bachelor's degree in business administration, while Smith does not have a college degree.  Gray also attempts to contrast the two candidates' disciplinary histories, but the record suggests that Smith's disciplinary record may in fact be superior to Gray's.  Therefore, notwithstanding the differences in educational background, Gray has not shown that the disparities between Smith's and her own qualifications "were of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff."  <u>Brooks</u>, 446 F.3d at 1163 (citation and internal quotations omitted).

   The city is entitled to summary judgment on Gray's retaliation claims.

34

* * *


For the foregoing reasons, the court concludes that summary judgment should be granted in favor of the City of Montgomery on each of Gray's claims.

An appropriate judgment will be entered.

DONE, this the 9th day of December, 2010.


        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE